UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIS IRIZARRY,                             :
      Plaintiff,                       :
                                         :
v.                                         :        No. 3:15cv1386 (DJS)
                                         :
LILY TRANSPORTATION CORP.,                 :
      Defendant.                       :

MEMORANDUM OF DECISION

      The plaintiff, Luis Irizarry ("Irizarry"), claims that the defendant, Lily Transportation Corporation ("Lily"), wrongfully terminated his employment in violation of the Surface Transportation Assistance Act, 49 U.S.C. § 31105 ("STAA"). In his Complaint, Irizarry alleges that Lily constructively discharged him when it failed to take corrective action in response to his reports that rental trucks he was assigned to drive had expired or mismatched registrations and/or insurance documents and instead required him to drive those vehicles without the proper documentation. Lily has filed a motion for summary judgment, contending that Irizarry has failed to establish a prima facie claim under the STAA. For the reasons stated below, Lily's motion for summary judgment is granted.

FACTS

      Lily hired Irizarry as a commercial truck driver in October 2014. At that time Irizarry, who held a commercial driver's license ("CDL"), had approximately twenty years of commercial truck driving experience. Irizarry typically drove overnight hours out of Lily's facility in Cheshire, Connecticut. Lily often assigned Irizarry to drive trucks rented from Ryder.

      When he arrived for his overnight shift on November 4, 2014, Irizarry discovered and reported to the Lily dispatcher, Al Foy ("Foy"), that the Ryder rental truck he had been assigned

to drive had expired registration and insurance documents. Foy instructed Irizarry to drive the truck to the Ryder facility in Waterbury, Connecticut in order to obtain the proper paperwork. Ryder was unable to produce current documentation for the truck, but Foy required Irizarry to make his deliveries in New York in the truck with expired registration and insurance documents. On two prior occasions, Irizarry had reported truck registration problems to the Lily dispatcher at the beginning of his shift. On those two occasions, the problems were resolved before he went out to make his deliveries.[1]  On each occasion when Irizarry reported a paperwork problem (registration/insurance) to the Lily dispatcher, he was instructed by the dispatcher not to note on his pre-operation inspection report the problem he had discovered. After Irizarry completed his deliveries on November 4-5, 2014, he  returned to the  Cheshire facility and resigned from his position at Lily.

After he returned to Cheshire the morning of November 5, 2014, Irizarry spoke with two members of Lily's management team - - an individual in charge of safety and Judy Cadden ("Cadden"), Lily's General Manager. He showed these managers photographs he had taken of the expired registration and explained to them the previous evening's documentation problem and his decision to resign. The safety manager told Irizarry he would speak with Foy to ensure that the problem did not recur. Irizarry responded to the safety manager by saying, "[y]ou can talk to [Foy] and fix the problem. I don't care, but it's not going to be on me. I'm not going to let

---

[1]In his Local Rule 56(a)2 Statement, Irizarry denies this fact,  citing to specific pages in his deposition transcript. Irizarry clearly testified at his deposition, however, that on the two other occasions when he reported a registration problem, the problem was resolved before he went out on his route. (Doc. # 43-4, at 90, p. 89:19-25). Pursuant to Fed. R. Civ. P. 56(e), "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."

nobody else mak[e] me do illegal stuff." (Doc. # 38-1, at 29, p. 115:2-5).  Irizarry stated that the safety "guy sa[id] that he was going to fix the problem, talk to Al Foy and I . . . told him do whatever you want, but I got enough. I just want you to know why I'm leaving." (*Id.* at 29, p. 116:4-8).

Cadden sent an email to Foy the morning of November 5, 2014, stating that she "[j]ust got a complaint about Al Foy giving Luis Irizarrie [sic] a hard time about a tractor that didn't have registration in it. Al we don't do that. If the equipment is missing something get with ryder and get it fixed!" (Doc. # 38-5, at 2). In a subsequent email that day Cadden told Foy he needed "to get with the driver tonight to get this cleared up. At no time do you send out a driver in a tractor that he refuses to take because of DOT issues." (*Id.*). Later that afternoon, Cadden sent another email to Foy and others stating that Irizarry "just quit and said he is not dealing with us and is going to DOT for making a person drive without registration." (*Id.* at 1).

On November 6, 2014, another dispatcher, who was unaware of Irizarry's resignation, called Irizarry to give him his work schedule for that evening. Irizarry told the dispatcher that he was no longer working for Lily. On November 10, 2014, Cadden notified Lily's Director of Recruiting, Richard White ("White"), of Irizarry's resignation and provided Irizarry's contact information to him. White attempted without success to call Irizarry about returning to work at Lily. Irizarry testified at his deposition that he believes his phone had been disconnected at that time and, and as result, he would not have received any phone messages.

On or about February 9, 2015, Irizarry filed a wrongful termination complaint with the Department of Labor, Occupational Safety & Health Administration ("OSHA"). In that complaint Irizarry alleged that he resigned from his employment at Lily because he had been

directed to make his deliveries driving a truck that did not have an up-to-date registration or insurance document, and he feared that if he received a traffic ticket for not having a registration or insurance paperwork, his CDL could be jeopardized. Because OSHA did not issue a final decision on his complaint within 210 days, Irizarry filed his Complaint in this action. *See* 49 U.S.C. § 31105 (c ) ("if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint . . . the employee may bring an original action . . . in the appropriate district court of the United States").

STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.; *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). The nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

DISCUSSION

In his Complaint, Irizarry alleges that  "[w]hile performing his daily inspection of [the

-4-

trucks he was assigned to drive for Lily] as required by 49 CFR 396.11, the Plaintiff noticed that many of the trucks had expired registrations and/or registrations or insurance documents that did not match the truck." (Doc. #1, at 2, ¶ 5). Irizarry then alleges that he "identified these issues in his daily inspection reports, but the Defendant did nothing in response." (*Id.* at 2, ¶ 6). The Complaint further alleges that on November 5, 2014, Irizarry reported to the evening dispatcher that the truck he had been assigned to drive did not have an up-to-date registration. The dispatcher instructed Irizarry to attempt to obtain up-to-date documentation from Ryder, which had rented the truck to Lily. When Ryder was unable to secure a current registration for the truck, the Lily dispatcher ordered Irizarry to make his deliveries without the proper documentation. After completing his deliveries and returning to the Lily facility, Irizarry resigned.   According to the Complaint, "[t]he Defendant constructively discharged the Plaintiff's employment when it failed to take any action in response to the Plaintiff's report that his vehicle violated one or more commercial vehicle law/regulation related to health, safety, or security." (*Id.* at 3, ¶ 12).

Lily contends in its motion for summary judgment that Irizarry has failed to establish a prima facie case of wrongful termination under the STAA. Lily argues that Irizarry's complaints about missing or expired registrations and insurance documents did not constitute protected activity under the STAA, because those complaints were unrelated to motor vehicle safety. Lily argues further that the circumstances of Irizarry's resignation cannot satisfy the standard applicable to a constructive discharge claim. Lily also argues that Irizarry failed to establish a causal link between any of his complaints about the trucks he was assigned to drive and his alleged constructive discharge.

In opposing Lily's motion for summary judgment, Irizarry contends that in addition to

improper documentation, he had also complained to Lily about problems with the lights and tires on trucks he had been assigned to drive. Irizarry testified at his deposition that he had to drive to the Ryder facility to get a flat tire fixed "more than once," and that a "couple [of] times" he had to drive to the Ryder facility to have a problem with the lights on the truck fixed. (Doc. # 43-4, at 130, p. 129:11-16 and at 131, p. 130:10-15).

As noted by Lily in its reply memorandum in support of the motion to dismiss, Irizarry has admitted that his OSHA complaint, his unemployment hearing testimony, the Complaint in this action, and his interrogatory responses all base his STAA claim on his complaints to Lily about being assigned to drive trucks that did not have up-to-date registrations and/or insurance documentation. At no time did Irizarry seek to amend his Complaint to add allegations regarding problems with truck tires or lights. "A complaint cannot be amended merely by raising new facts and theories in plaintiff's opposition papers, and hence such new allegations and claims should not be considered in resolving the motion [for summary judgment]." *Southwick Clothing LLC v. GFT (USA) Corp.*, 99 CV 10452 (GBD), 2004 U.S. Dist. LEXIS 25336, at *20 (S.D.N.Y. Dec. 15, 2004). The Court will proceed to resolve the motion for summary judgment on the basis of the allegations included in the Complaint, i.e., registration and insurance documentation issues with trucks Irizarry was assigned to drive.

STAA Prima Facie Case

The STAA "protects employees from retaliation by their employers on account of a complaint of a violation of federal safety regulations in the transportation industry." *Kennedy v. Supreme Forest Products, Inc.*, No. 3:14-cv-01851 (JAM), 2016 U.S. Dist. LEXIS 160577, at *4 (D. Conn. Nov. 19, 2016). A plaintiff establishes a prima facie case of unlawful termination

-6-

under the STAA by "showing that the employee engaged in protected activity, that the employee was subjected to adverse employment action, and that there was a causal connection between the protected activity and the adverse action." *R & B Transportation, LLC v. United States Department of Labor, Administrative Review Board*, 618 F.3d 37, 46 (1ˢᵗ Cir. 2010) (internal quotation marks omitted). If the plaintiff can establish a prima facie case, the burden shifts to the employer to provide evidence of a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the employer provides such evidence, the burden shifts back to the employee to demonstrate that the proffered reason is merely a pretext for unlawful retaliation. *Id.*

A. Engagement In Protected Activity

The STAA provides in pertinent part that "[a] person may not discharge an employee . . . because . . . the employee . . . has filed a complaint . . . related to a violation of a commercial motor vehicle safety or security regulation, standard, or order . . . ." 49 U.S.C. § 31105(a)(1)(A)(i). Lily argues that Irizarry's claim fails in the first instance because it is not based on activity protected by the STAA. Lily maintains that Irizarry's complaints about registrations and insurance documents were unrelated to motor vehicle safety. In support of that argument, Lily refers to a Fourth Circuit decision which recognized that the STAA is concerned with "protecting the interests of driver[s] and public safety" and "obviously does not protect [matters] unrelated to the statutory purposes of public and personal safety." *Yellow Freight Systems, Inc. v Reich*, 8 F.3d 980, 987-88 (4ᵗʰ Cir. 1993).

With regard to registrations and insurance documents that were not up to date, Lily contends that "[t]here is nothing about dates on paperwork stored in a truck's glove compartment that could possibly make it unsafe to drive." (Doc. # 36, at 7). To bolster this argument, Lily

refers to the Federal Motor Carrier Safety Regulations which, among other things, list certain parts and accessories which a driver must determine are in good working order before driving a commercial motor vehicle. Lily notes that up-to-date paperwork is not included on the regulation's list. Lily also argues that a truck's registration does not document that the truck is safe to drive, but is, instead, "a matter of state law designed to establish an identifiable link between a vehicle and its owner." (Doc. # 44, at 3) (citing *State v. Smolen*, 4 Conn. Cir. Ct. 385, 390-91 (1967)).

The Ryder truck Irizarry was assigned to drive on November 4-5, 2014 had a Pennsylvania registration that was valid from June 1, 2013 to May 31, 2014. (Doc. # 38-4, at 1). Under Pennsylvania law, the Department of Motor Vehicles "shall refuse registration, renewal or transfer of registration when . . . [t]he vehicle is not . . . equipped as required by this title." Pa. Cons. Stat. § 1306. Title 75 of the Pennsylvania Consolidated Statutes has various motor vehicle equipment requirements. One such requirement is that "[e]very vehicle . . . operated on a highway shall be equipped with a head lamp system in conformance with regulations of the department." Pa. Cons. Stat. § 4303. The Federal Motor Carrier Safety Regulations cited by Lily specifically include "[l]ighting devices and reflectors" on the list of parts and accessories which a driver must determine are in good working order before driving a commercial motor vehicle. 49 C.F.R. § 392.7(a). Based on the provisions of the Pennsylvania statutes, the Court cannot conclude that having an up-to-date registration in the Ryder truck Irizarry was assigned to drive on November 4-5, 2014 was unrelated to safety. For that reason, the Court, drawing all inferences in favor of the non-moving party Irizarry, finds that Irizarry was engaged in protected activity by complaining about the lack of an up-to-date registration on November 4-5, 2014, and

consequently he satisfied the first prong of the test for a prima facie case of unlawful termination

under the STAA.

B. Adverse Employment Action

Lily also argues that no adverse employment action was taken against Irizarry, since he

was not constructively discharged but voluntarily resigned from his Lily employment. Irizarry

counters with the argument that he did suffer an adverse employment action, i.e., a constructive

discharge, in that Lily intentionally created intolerable working conditions that forced him to

resign. In order to meet "the high standard" applicable to a claim of constructive discharge, a

plaintiff is required "to show both (1) that there is evidence of the employer's intent to create an

intolerable environment that forces the employee to resign, and (2) that the evidence shows that a

reasonable person would have found the work conditions so intolerable that he would have felt

compelled to resign." *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir. 2014)

(internal quotation marks omitted).

According to his own deposition testimony, Irizarry discovered paperwork problems

(registration/insurance documentation) with the Ryder truck he had been assigned to drive on

three occasions during the brief period he was employed by Lily. On each occasion he reported

the problem to the dispatcher on duty and was instructed not to note the problem on the pre-

operation report he was required to complete. On two of the three occasions the problem was

resolved before he left the Lily facility. On the third occasion, November 4, 2014, Foy, who was+

the dispatcher on duty that evening, initially instructed Irizarry to drive to the Ryder facility to

obtain the proper paperwork. When Ryder was unable to produce current paperwork for the truck

assigned to Irizarry, Foy demanded that he make his deliveries without the current paperwork.

-9-

The Court finds that Irizarry has not satisfied the requirement that he show evidence of Lily's intent to create an intolerable work environment that caused him to resign. On two of the three occasions when the Ryder truck assigned to him had paperwork issues, the problem was resolved before Irizarry left the Lily facility. On the third occasion, Irizarry was directed to make his deliveries in a truck that did not contain a current registration. The Court acknowledges that Foy's insistence created a difficult situation for Irizarry. The Court does not find, however, that this event met the high standard required for the establishment of a constructive discharge. *See Collazo v. County of Suffolk*, 163 F. Supp. 3d 27, 45 (E.D.N.Y. 2016) (internal quotation marks omitted) ("[t]he constructive discharge standard is demanding and it will not be satisfied based on difficult or unpleasant working conditions"); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) ("As ineffective or even incompetent as [a manager's] handling of the matter may have been, it does not rise to the level of deliberate action required by our precedent [pertaining to constructive discharge].").

Irizarry's argument that Lily intentionally created an intolerable work atmosphere that forced him to resign is also inconsistent with actions taken by Lily on and after November 5, 2015. After Irizarry informed Cadden, Lily's General Manager, that he had been directed by Foy to make his deliveries in a truck that did not have a current registration, she sent an email to Foy stating, among other things, "Al we do not do that. If the equipment is missing something get with ryder and get it fixed!" (Doc. # 38-5, at 2). Later that same day, she sent another email to Foy stating "you need to get with the driver [Irizarry] tonight to get this cleared up. At no time do you send out a driver in a tractor that he refuses to take because of DOT issues." (*Id.*). On November 10, 2014, Cadden provided White, Lily's National Director of Recruiting, with

Irizarry's contact information. White attempted without success to call Irizarry about returning to work at Lily. Irizarry testified at his deposition that he believes his phone had been disconnected at that time and, as result, he would not have received any phone messages. Lily's actions demonstrate an interest in retaining him in his position, which undermines a claim of constructive discharge. *See Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) (because the defendant employer had made repeated attempts to retain the plaintiff, "no rational trier of fact could conclude that a reasonable person in her position would have felt that her employer deliberately sought to make her working conditions so intolerable that she had no choice but to resign").

Even if it were assumed that Foy's insistence on November 4, 2014 that Irizarry make his deliveries in a truck lacking a current registration satisfied the requirement that he show evidence of Lily's intent to create an intolerable environment, "[t]hat would not be the sort of circumstance that would cause a reasonable person to conclude that quitting was the only way []he could extricate [him]self from . . . intolerable conditions." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 231 (2d Cir. 2004) (internal quotation marks omitted). As soon as he returned to the Lily facility in Cheshire the morning of November 5, 2014, Irizarry spoke with the Lily safety manager.  He showed the safety manager photographs he had taken of the expired registration and explained to him the previous evening's documentation problem and his decision to resign. The safety manager told Irizarry he would speak with Foy to ensure that the problem did not recur. Irizarry responded to the safety manager by saying, "[y]ou can talk to [Foy] and fix the problem. I don't care, but it's not going to be on me. I'm not going to let nobody else mak[e] me do illegal stuff." (Doc. # 38-1, at 29, p. 115:2-5).  Irizarry testified at his deposition that the

safety "guy sa[id] that he was going to fix the problem, talk to Al Foy and I . . . told him do whatever you want, but I got enough. I just want you to know why I'm leaving." (*Id.* at 29, p. 116:4-8).

The assurance given to Irizarry by the Lily safety manager that the problem identified by Irizarry would be addressed undercuts any claim that a reasonable person in his position would have felt compelled to resign. The subsequent emails sent by Cadden to Foy demonstrate that the safety manager's statement to Irizarry was not an empty gesture and that Lily followed through on that assurance. *"*[C]ourts in this circuit generally have refused to find a constructive discharge where an employee had an avenue through which he could seek redress for the allegedly 'intolerable' work atmosphere leading up to his resignation, but failed to take advantage thereof." *Silverman v. City of New York*, 216 F. Supp. 2d 108, 115 (E.D.N.Y. 2002)*; see also Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1157 (2d Cir. 1993) (plaintiff's claim of a constructive discharge was rejected by the court in part because the plaintiff "had a quite effective alternative to resignation. He could have lodged a complaint about [a supervisor] to the Company's [Human Resources Division"). The record demonstrates that Lily offered Irizarry an avenue through which he could seek redress for his complaints, but Irizarry declined to take advantage of that avenue. The Court finds that Irizarry failed to show that the events of November 4-5, 2014 "rendered [his] working conditions so intolerable that a reasonable person would have felt compelled to resign." *McLean v. University of Connecticut Health Center*, No. 3:15-cv-1771 (SRU), 2016 U.S. Dist. LEXIS 39087, at *11 (D. Conn. March 25, 2016). Consequently, Irizarry has not established the second prong of a prima facie case of unlawful termination under the STAA and his claim of unlawful termination fails for that reason.

CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment (**doc. # 35**) is **GRANTED**.

Judgment shall enter in favor of the defendant Lily Transportation Corporation, and the Clerk is directed to close this case.

SO ORDERED this 18th    day of July,  2017.

_____/s/ DJS_____
                Dominic J. Squatrito
                United States District Judge